IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDUARDO CARTAYA,

        Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
AGRICULTURE FOREST SERVICE
and ERIK LARSON,

        Defendants.

Case No. 6:18-cv-02042-MC

**OPINION & ORDER**

**MCSHANE, Judge**:

        Plaintiff Eduardo Cartaya brings claims for unpaid wages and retaliation under the Fair Labor Standards Act ("FLSA") regarding various cave-related projects he performed while employed with Defendant U.S. Department of Agriculture Forest Service ("the Forest Service"). Because Plaintiff's cave-related work at issue constitutes volunteer work and the record is devoid of evidence of retaliation, Defendants' Motion for Summary Judgment (ECF No. 39) is GRANTED.

**FACTUAL BACKGROUND**

        Eduardo Cartaya has been a law enforcement officer with the Forest Service since 2010. Cartaya Decl. ¶ 2, ECF No. 47. His law enforcement duties with the Forest Service include enforcing laws and investigating crimes on national forest lands, acting as a technical specialist in criminal prosecutions, assisting with forest resource and protection activities, and assisting outside agencies in search and rescue. Danielson Decl. Ex. 5, at 1–3, ECF No. 43. In addition to

1 – OPINION AND ORDER

his experience as a law enforcement officer, Cartaya has extensive experience in caving, including cave management, exploration, and rescue. Cartaya Decl. ¶ 9–10. In general, the Forest Service relies on volunteers with the National Speleological Society ("NSS") and the National Cave Rescue Commission ("NCRC") to manage and protect caves on Forest Service land and perform cave search and rescue. Danielson Decl. Ex. 3, at 1. Cartaya is a regional coordinator of the NCRC and a volunteer for the NSS. Cartaya Decl. ¶ 7–8.

Cartaya seeks unpaid wages for 16 cave-related projects, which include fieldwork, presentations, and trainings. Pl.'s Resp. to Defs.' Mot. Summ. J. 5, ECF No. 45. Cartaya's fieldwork included several projects on Mt. Hood, Mt. St. Helens, and Mt. Rainer at various times in 2015–2018. *Id.* These expeditions involved volcanic hazard management, cave mapping, resource monitoring, and other glacier cave work. Danielson Decl. Ex. 1, at 10–14. Cartaya also gave presentations at conferences sponsored by the Forest Service; specifically, presentations regarding ongoing volcanic monitoring and data collection from fieldwork at Mt. St. Helens and Mt. Rainer. Pl.'s Resp. 7. The Forest Service encouraged its staff to attend. Cartaya Decl. ¶ 18, 27, 29. Finally, Cartaya submits that he led several trainings that were of benefit to the Forest Service. These trainings, given in connection with work through the NCRC, include search and rescue training, a cave rescue seminar, and certification training for teaching cave rescue. Pl.'s Resp. 8; Cartaya Decl. ¶ 31, 33, 35, 39.

The Forest Service previously paid Cartaya regular wages for some of his cave-related work on a case-by-case basis when there was a clear nexus between the work and his law enforcement duties. MaGee Decl. Ex. 1, at 4, ECF No. 42. For example, each year Cartaya was approved to participate in about a dozen search and rescue trainings on official time. *Id.* at 5. But with regard to fieldwork, Cartaya was instructed by his supervisor to use personal annual leave to

2 – OPINION AND ORDER

conduct these studies due to workers compensation liability and the hazardous conditions of the caves. Cartaya Decl. ¶ 11. While Cartaya acknowledges that "there are times when it may be hard to define the time separation between [his] Forest Service cave rescue-related duties from [his] NCRC and SAR cave-related duties," he admits that "[a]ll [his] time with SAR and NCRC is unpaid and voluntary unless on approved/pre-approved 0-1 time." MaGee Decl. Ex. 1, at 7. Cartaya further admits that his research and exploration at Mt. St. Helens and Mt. Rainer was not done on official Forest Service time, but rather as an NSS volunteer. *Id.* at 6–7.

In April of 2017, Cartaya was placed on administrative leave due to a criminal investigation for an incident that occurred at the Redmond airport. Perry Decl. Ex. 1, ECF No. 41. While on administrative leave, Cartaya could not perform any law enforcement activities such as making arrests, operating a police car, or performing criminal investigations. Danielson Decl. Ex. 1, at 9. The Forest Service initiated its own administrative investigation in June 2017 based on the airport incident, as well as allegations that Cartaya misused government resources. Danielson Decl. Ex. 6, at 4. In April 2018, while Cartaya was still on administrative leave, Cartaya filed a step 1 FLSA grievance for regular and overtime wages. Am. Compl. ¶ 42, ECF No. 11. Cartaya's FLSA grievance was escalated to step 2 in June 2018. *Id.*

Later that year, in November 2018, the Forest Service issued a Notice of Proposed Removal of Cartaya based on alleged misconduct related to his cave activities. *Id.* ¶ 43. In December 2018, a special agent reviewing the investigation concluded that the Forest Service had not proved Cartaya's alleged misconduct. *Id.* ¶ 45; Danielson Decl. Ex. 6. The special agent noted that Cartaya completed the caving expeditions at issue on annual leave at the direction of his supervisor. Danielson Decl. Ex. 6, at 24. The agent also noted the cave-related work appeared to support the Forest Service in its monitoring and management of cave resources. *Id.* The Forest

3 – OPINION AND ORDER

Service rescinded the proposed removal and returned Cartaya to his regular duties. *Id.* at 33. A few days after Cartaya was cleared from the investigation, Defendant Larson, Cartaya's then supervisor, contacted an officer at Deschutes County Search and Rescue to disclose the status of the investigation. Cartaya Decl. ¶ 6. In February 2019, Deschutes County terminated Cartaya from its search and rescue team. *Id.*

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

The FLSA requires employers to pay their employees for all "hours of work," which includes regular wages for each 40-hour work week and overtime compensation for excess hours. 29 U.S.C. § 201–219. "Hour of work" is defined as time spent by an employee performing tasks (1) necessarily and primarily for the benefit of the employer and (2) under the direction or control of the employer. *See Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S.

4 – OPINION AND ORDER

590, 598 (1944); 5 C.F.R. § 551.104 (2021). Additionally, employers may not discriminate or retaliate against employees for filing a complaint under the FLSA. 29 U.S.C. § 215(a)(3).

**I. Wage claim**

Cartaya argues that the Forest Service benefitted from and controlled his 16 cave-related projects, citing that the Forest Service itself has stated that cave-related work is essential to its operation. Pl.'s Resp. 12–13. The Forest Service counters that the projects were not done for its benefit or under its control, and the projects constitute volunteer work that is exempted from the FLSA. Defs.' Mot. Summ. J. 18, ECF No. 39; Defs.' Reply in Supp. Summ. J. 7, ECF No. 49.

The FLSA defines "employ" broadly as "to suffer or permit to work." 29 U.S.C. § 203(g). But even this expansive definition should not be interpreted to "sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, work[s] in activities carried on by other persons either for their pleasure or profit." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). In support of this notion, Congress enacted an exemption from compensation under the FLSA for individuals who perform volunteer work for public agencies. An individual is not an "employee" if "(i) the individual receives no compensation . . . to perform the services for which the individual volunteered; and (ii) such services are not the same type of services which the individual is employed to perform for such public agency." 29 U.S.C. § 203(e)(4)(A).

Whether an employee falls under the volunteer exemption is a question of law. *See Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (citing *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002)). The FLSA does not define "volunteer," but the Department of Labor defines it as "[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of

5 – OPINION AND ORDER

compensation for services rendered." 29 C.F.R. § 553.101(a) (2021). An individual cannot be a volunteer if the individual is employed by the public agency to perform the same type of services as those the individual proposes to volunteer. *Id.* § 553.101(d). This provision "reflects the unmistakable intention of the Department of Labor (and no doubt of Congress) to prohibit any manipulation or abuse of minimum wage or overtime requirements through coercion or undue pressure upon individuals to 'volunteer' their services." *Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 428 (4th Cir. 2011) (citing 29 C.F.R. § 553.101(b)).

A court should apply the regulatory definition of volunteer "in a common-sense manner, which takes into account the totality of the circumstances surrounding the relationship between the individual providing services and the entity for which the services are provided." *Id.* The court should consider whether the volunteer service is "closely related to the actual duties performed by or responsibilities assigned to the employee." 29 C.F.R. § 553.103(a) (2021). For instance, a firefighter cannot volunteer as a firefighter for the same public agency, but a city parks department employee could serve as a volunteer city firefighter. *Id.* § 553.103(b)–(c).

Considering the totality of the circumstances here, the evidence demonstrates that the 16 projects at issue constitute volunteer work. Cartaya did not previously request compensation for any of these projects, despite his practice of regularly submitting pay requests for other cave-related work, which the Forest Service approved or denied on a case-by-case basis depending on the relatedness to Cartaya's law enforcement duties. *See* Cartaya Decl. ¶ 23, Ex. 7; MaGee Decl. Ex. 1, at 4. Additionally, Cartaya performed these hours of service for civic, charitable, or humanitarian reasons:

> I volunteer hundreds of hours each year to organizations that manage and protect our cave resources and perform cave rescues on federal land. . . . My only objective in doing this [sic] to help make sure the caving resources on our forests

are properly managed, that people are safe, and that we are positioned to help save lives in an emergency. I gain no personal profit from this.

MaGee Decl. Ex. 1, at 12–13.

Cartaya's work is commendable, but there is no indication that the Forest Service pressured or coerced Cartaya into volunteering for these projects in order to maintain his employment. The Forest Service was supportive of Cartaya's cave-related work and included comments of appreciation in many of his performance reviews. Cartaya Decl. ¶ 14, Ex. 3. But none of the 16 projects were required for his job as a law enforcement officer and the Forest Service did not request his involvement in them. Finally, Cartaya explicitly states that he performed much of his work on these projects as a member of volunteer organizations, not an employee of the Forest Service. MaGee Decl. Ex. 1, at 6–7.

Cartaya argues that the 16 projects cannot constitute volunteer work because they are similar to his official duties with the Forest Service. Pl.'s Resp. 14. The Forest Service, Cartaya claims, previously compensated him for some trainings, presentations, and other cave-related duties that are identical to the work at issue in this case. *Id.* He further argues the Forest Service relied greatly on his cave expertise and experience to help with management of the caves on federal land. *Id.* at 15. Indeed, Cartaya has previously performed cave rescues, attended cave-related trainings, and given cave-related presentations as part of his official Forest Service duties.

From a broad perspective, it would seem Cartaya's cave-related work was a part of his employment with the Forest Service. But when reviewing each of the 16 projects at issue, it is clear that they differ from his official duties. The fieldwork projects at Mt. Rainer, Mt. Hood, and Mt. St. Helens were research expeditions—which Cartaya participated in through volunteer organizations—that involved surveying cave resources or implementing hazard management mechanisms. Cartaya's employment as a law enforcement officer did not encompass caving

7 – OPINION AND ORDER

expeditions or research studies. Rather, Cartaya's cave-related duties with the Forest Service were limited to search and rescue, for which he requested pre-approval from a supervisor to participate in on official time. *See* MaGee Decl. Ex. 1, at 5, 7; Danielson Decl. Ex. 4, at 2.

For the same reasons, the trainings and presentations Cartaya conducted are also volunteer work. All four of the trainings were conducted through the NCRC. Both presentations relate to the cave research studies Cartaya was involved with at Mt. Rainer, Mt. St. Helens, and Mt. Hood as a volunteer. The Forest Service approved Cartaya's participation on regular paid time for other cave-related trainings and presentations on a case-by-case basis depending on their relevance to his law enforcement duties. MaGee Decl. Ex. 1, at 4. The four trainings and two presentations at issue relate to his volunteer activities rather than his official duties with the Forest Service.

Even if the volunteer exemption does not apply, Cartaya cannot demonstrate that the 16 projects were under the direction or control of the Forest Service. *See Tenn. Coal, Iron & R.R. Co.*, 321 U.S. at 598. In *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 146 (4th Cir. 1999), the Fourth Circuit held that city firefighters were not entitled to compensation for time spent volunteering with private medical rescue squads because the City had limited control over the rescue squads, the City did not require or request the firefighters' participation, and the firefighters participated without expectation of compensation. "After making the independent decision to volunteer their services, plaintiffs have apparently changed their minds, believing the City should compensate them for these services. It is clear, however, that they have no remedy in the FLSA for this change of heart." *Id.*

A similar change of heart appears in this case. The Forest Service did not request Cartaya's involvement in these 16 projects. They were not requirements of his employment as a

law enforcement officer. There is no indication that the Forest Service attempted to coerce or pressure Cartaya into "volunteering" his services. *See Purdham*, 637 F.3d at 428. For other cave-related projects, Cartaya requested pre-approval from his supervisors to perform them on official paid time. For these 16 projects, he did not. Cartaya chose to volunteer for these projects because of his interest and expertise in caving. He admits most of this work was performed as a volunteer for the NSS or NCRC. As the court in *Benshoff* explained, Cartaya cannot retroactively seek compensation for work that the Forest Service did not direct or control.

Because the 16 projects constitute volunteer work and were not directed or controlled by the Forest Service, Defendants' Motion for Summary Judgment is GRANTED as to Cartaya's wage claim.

## II. Employment Retaliation

Cartaya brings an employment retaliation claim under the FLSA against the Forest Service and Defendant Larson alleging various acts of retaliatory conduct after Cartaya filed his FLSA complaint.

To bring a successful retaliation claim, the plaintiff must show: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986). A causal link is shown "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the [adverse employment action] and that but for such activity the plaintiff would not have been fired." *Id.* A causal link may be inferred from "the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

The *McDonnell Douglas* burden-shifting framework applies to employment retaliation claims. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Accordingly, if a plaintiff establishes the above elements, an employer may rebut the plaintiff's case by producing "evidence sufficient to dispel the inference of retaliation raised by the plaintiff." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). The burden then shifts back to the plaintiff to show the employer's given reasons are pretextual. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255–56 (1981).

Cartaya argues that the Forest Service retaliated against him numerous times after filing his FLSA grievance on April 16, 2018. The first instance involves an email from Captain Smith on May 4, 2018 in which he precludes Cartaya from teaching a cave safety course to federal employees, a training Cartaya had taught on several prior occasions. Pl.'s Resp. 10. In the second instance, after Cartaya filed his step 2 FLSA grievance on June 18, 2018, the Forest Service stated in an email that Cartaya's FLSA claim is the subject of a "current administrative internal investigation and a new criminal IG investigation." *Id.* In the third instance, Cartaya requested to attend a cave meeting and tour with a visiting Forest Service official and was denied. *Id.*

The evidence does not support a retaliation claim against the Forest Service. All three of the above instances occurred while Cartaya was on administrative leave due to the pending misconduct investigation. Cartaya was on administrative duty from April 2017 to December 2018. Perry Decl. Ex. 1; Danielson Decl. Ex. 6, at 1. While on administrative duty, his permitted work activities were restricted. It was therefore not retaliatory for the Forest Service to prohibit Cartaya from participating in these activities while on administrative leave. Cartaya argues the Forest Service attempted to open a new criminal investigation after filing his FLSA complaint, but the evidence does not substantiate this claim. There was a criminal investigation from April

to June 2017 and an administrative investigation from June 2017 to December 2018. Danielson Decl. Ex. 6, at 4–5. Both investigations began well before Cartaya filed his FLSA complaint.

Cartaya argues that Defendant Larson retaliated against him by contacting an officer at Deschutes County Search and Rescue to disclose information about the investigation, which resulted in Cartaya's termination from the search and rescue team. Pl.'s Resp. 11. Cartaya does not know what information Larson conveyed to Deschutes County regarding the investigation. Additionally, Larson allegedly contacted Deschutes County after the investigation concluded in December 2018, eight months after Cartaya filed his FLSA complaint. With a lack of evidence substantiating the conversation between Larson and Deschutes County, and the eight-month time period between the protected activity and allegedly retaliatory conduct, Cartaya's retaliation claim against Larson fails.

Because there is no evidence of retaliatory conduct related to Cartaya's filing of a FLSA complaint, Defendants' Motion for Summary Judgment is GRANTED on both retaliation claims.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 39) is GRANTED.

IT IS SO ORDERED.

DATED this 26th day of January 2022.

         s/Michael J. McShane          
**MICHAEL J. McSHANE**  
**UNITED STATES DISTRICT JUDGE**